FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

99 MAY 10 AM 10: 32
U.S. DISTRICT COURT
N.D. OF ALABAMA

CRAIG S. FUNDERBURG and BETTY J. )
FUNDERBURG, )
    Plaintiff(s); )
                                                  )     No. CV-95-P-2720-S
-vs.- )
                                                  )
CITY OF HOMEWOOD, ALABAMA, )
    Defendant. )

ENTERED
MAY 10 1999

## OPINION

Defendant City of Homewood's Motion for Summary Judgment was considered at a prior motion docket. For the following reasons, this motion is due to be granted.

### Facts[1]

This lawsuit arises from efforts by the plaintiffs to obtain a permit to build a circular driveway at their home, situated on two lots at the corner of Malaga Avenue and LaPrado Circle in the City of Homewood ("City"). On January 13, 1992 the plaintiffs, Craig and Betty Funderburg, applied for a permit with the City to install a circular driveway. The City had in force an ordinance that required "street frontage" of at least 150 feet for two driveway entrances and of at least 300 feet for three driveway entrances. In March 1992, Funderburg had several interactions with the Board of Zoning Adjustments ("BZA") to determine whether the Funderburgs had enough street frontage for a circular driveway and whether they would be granted a variance if they did not.

Funderburg was told at some point by a City employee that he needed to have his two lots

---

1. The recitation of "facts" is based upon the presented materials viewed in the light most favorable to the plaintiff.

64

resurveyed into one lot to obtain a permit for a circular driveway. After the resurvey, Funderburg submitted another application, dated May 11, 1992. On the evening of May 11, 1992, the City Council amended the driveway ordinance to require street frontage of at least 200 feet for two driveway entrances and of at least 350 feet for three driveway entrances. Members of the Council may have been motivated by a belief that Funderburg wanted the driveway to facilitate the business he was allegedly running in his home. In May, after the ordinance change, Funderburg submitted two more applications for circular driveways in somewhat different configurations. On June 11, 1992, Funderburg submitted an application for a permit for a driveway with one entrance, which was issued.

In May 1992 and again in December 1992, the BZA requested defendant Gay & Powell's assistance in determining the street frontage of the Funderburgs' property. Gay & Powell was acting as the city engineer at this time. Gay & Powell determined that the Funderburgs had 279 feet of street frontage. This opinion was documented in a letter from Ron Powell to Building Inspector Jerry Crowe on December 2, 1992.[2] On December 3, 1992, the Funderburgs again came before the BZA to request a circular driveway. At the meeting, Crowe said that the engineering report showed that the Funderburgs had 279.41 feet of street frontage, and that therefore the Funderburgs did not have enough street frontage for three driveway entrances. The Funderburgs withdrew their application for a circular driveway.

In December 1992, Funderburg met with Ron Powell to discuss the engineering report. Powell told Funderburg that he had only received part of the driveway ordinance, and that the report

---

2. Funderburg testified that in November 1992, Crowe told Ms. Funderburg that he had seen the engineering report and that it indicated that the Funderburgs did not need a variance to obtain a permit for a circular driveway.

2

would have to be amended based on a review of the complete ordinance, including attached drawings. At some point, Funderburg gave Powell a drawing of the Funderburgs' property, prepared by Building Inspector Jerry Sims, which showed street frontage measured with reference to the curb. On December 30, 1992, Gay & Powell prepared a revised engineering report. The revised report identified an uncertainty over the meaning of the term "corner radius" as used in the ordinance,[3] and indicated that the meaning of the term was best resolved by the BZA. The revision did not address the proper way to measure "street frontage."

In January 1993, Funderburg filed a written request to reappear before the BZA, which was denied at the BZA meeting on January 7, 1993. Powell appeared at the January 7, 1993 meeting and told the BZA that the Funderburgs did not have enough street frontage for three driveway entrances. The Funderburgs filed an appeal in the Circuit Court of Jefferson County, Alabama, in January 1993. The appeal was dismissed in August 1993, on the grounds that the BZA never voted on the application for a circular driveway, and that therefore the Funderburgs had not exhausted their administrative appeals.

In August 1993, the Funderburgs reapplied for a driveway permit. In September 1993, the Funderburgs reappeared at a BZA meeting at which Powell stated that the previous engineering reports were submitted without visiting the site. In September 1993, Powell and Jimmy Gay, from Gay & Powell, went to the Funderburgs' property. Gay appeared at the October 7, 1993 BZA meeting and stated that he had completed a site visit and that, in the opinion of Gay & Powell, only frontage on Malaga Avenue should be considered and that the Funderburgs did not qualify for the

---

3. The term "corner radius" affects the placement, but not the number, of driveway entrances.

circular driveway under the ordinance. Gay also stated that the proposed driveway would not create a traffic hazard and that he saw no problem with the granting of a variance. The BZA denied the variance request. The Funderburgs appealed this decision to the Circuit Court of Jefferson County on October 22, 1993. In this appeal, the Funderburgs claimed that the actions of the City and the BZA were arbitrary and capricious and violated the Funderburgs' rights to due process.

In September 1994, the City Council voted to change the driveway ordinance. The new ordinance reduced the street frontage requirement for two driveway entrances from 200 feet to 75 feet. In September 1994, the Funderburgs received a permit for a circular driveway and completed construction of a circular driveway. Because the changed ordinance allowed the Funderburgs to construct a circular driveway without a variance, the Funderburgs' appeal was dismissed in November 1994.

The Funderburgs filed this lawsuit on October 23, 1995. The Funderburgs assert six counts in their complaint: 1) deprivation of civil rights under 42 U.S.C. § 1983; 2) violation of the right to equal protection under the Fourteenth Amendment; 3) negligence; 4) fraud, deceit, and misrepresentation; 5) outrage; and 6) breach of contract. All counts were alleged against both defendants. In March 1997 the court granted Gay & Powell's motion for summary judgment, leaving the City as the sole defendant.

## Analysis

I.  <u>Civil rights</u>

The Funderburgs claim that they were deprived of their civil rights under 42 U.S.C. § 1983. Specifically, the Funderburgs claim 1) that their rights to equal protection under the Fourteenth Amendment were violated when the City unequally applied a facially neutral ordinance to them and

denied their driveway application; and 2) that their substantive due process rights were violated when the City deprived them of a property interest in a permit for the driveway. In support of its summary judgment motion, the City argues that the applicable two-year statute of limitations began to run on October 7, 1993, the date of the last denial by the City of the Funderburgs' request for a permit. Because this action was filed on October 23, 1995, the City contends that it is time-barred. The City also argues that 1) a municipality can be liable under § 1983 only for deprivations of rights arising from custom or policy[4]; 2) the plaintiffs must prove intentional discrimination to state a valid equal protection claim; and 3) the plaintiffs have no property interest sufficient to invoke the due process clause of the Fourteenth Amendment.

To prevail on an equal protection claim based on the unequal application of a facially neutral ordinance, the plaintiffs must establish that 1) they were treated differently than similarly situated persons; and 2) the City unequally applied the ordinance for the purpose of discriminating against the plaintiffs.[5] The plaintiffs allege that other homeowners received permission to install circular driveways during the time the Funderburgs' application was being denied. Although the plaintiffs have submitted photographs of Homewood houses with circular driveways, only one out of ten of the photographs shows a circular driveway on a corner lot with entrances on two different streets. The court cannot determine whether the owner of this house was similarly situated to the

---

4. Although the court tends to agree that the plaintiffs have not identified a policy or custom violative of their rights, the court notes that *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978), found that municipalities could be sued under § 1983 when the challenged action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." To the extent that the plaintiffs' lawsuit focuses on the implementation of the City's ordinances, *Monell* appears to be satisfied. Consequently, the court does not address the defendant's argument.

5. *See Strickland v. Alderman*, 74 F.3d 260, 264 (11th Cir. 1996).

Funderburgs because no evidence was submitted as to when this homeowner built the driveway or whether a permit or variance was issued. In the absence of evidence that other homeowners were similarly situated to the plaintiffs yet treated differently, the equal protection claim cannot go forward. The City's motion for summary judgment on this claim is therefore due to be granted.

Even if the court did determine that the plaintiffs were treated differently than similarly situated persons, the plaintiffs would still have to show that the City unequally applied the ordinance "for the purpose of discriminating against the plaintiff."[6] To the extent that the Funderburgs' equal protection claim challenges the May 11, 1992 amendment to the driveway ordinance, the City's actions would appear to be protected by absolute legislative immunity.[7] Legislative immunity would not attach to the City's application of the ordinance, however. Although the plaintiffs have submitted evidence concerning the events surrounding the amendment of the ordinance,[8] the plaintiffs have not established that the City unequally applied the amended ordinance. At most, the plaintiffs' evidence indicates that the City's engineers had difficulty interpreting the ordinance and that the City based its actions on the opinions of its engineers. This evidence is insufficient to support an equal protection claim.

The plaintiffs' substantive due process claim warrants a different analysis that the parties have not addressed. In *McKinney v. Pate*[9] the Eleventh Circuit found that:

---

6. *See id.*

7. *See Bogan v. Scott-Harris*, 118 S. Ct. 966, 972-73 (1998).

8. To the extent that the adoption of the amendment might not be protected by legislative immunity, the court notes that the City's alleged motivation for the amendment–the suspicion that the Funderburgs were running a business out of their home–may have a rational basis related to zoning.

9. 20 F.3d 1550 (11th Cir. 1994) (en banc), *cert. denied*, 513 U.S. 1110 (1995).

6

> [A]reas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because "substantive due process rights are created only by the Constitution." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229, 106 S. Ct. 507, 515, 88 L. Ed. 2d 523 (1985) (Powell, J., concurring). As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural–not substantive–due process are observed.[10/]

Although *McKinney* involved state employment law, courts have interpreted it to mean that "Section 1983 substantive due process claims arising from non-legislative deprivations of state-created property interests are no longer cognizable."[11/]

In this case, the property interest alleged is in the driveway permit that the plaintiffs sought. Without determining whether the plaintiffs had a legitimate claim of entitlement to the permit sufficient to create a protectible property interest, the court finds that any such property right would be created by state law and not by the Constitution. Consequently, to the extent that the alleged deprivation of that property right was executive and not legislative, the plaintiffs' substantive due process claim would be barred. Whereas executive acts are typically ministerial or administrative activities that apply to a limited number of persons, legislative acts, like the passage of laws and

---

10. *Id.* at 1556.

11. *The Reserve, Ltd. v. Town of Longboat Key*, 933 F. Supp. 1040, 1043 (M.D. Fla. 1996). *See also DeKalb Stone, Inc. v. County of DeKalb, Georgia*, 106 F.3d 956 (11th Cir. 1997) (right in continued nonconforming use of land was state-created right protected only by procedural due process); *Boatman v. Town of Oakland, Florida*, 76 F.3d 341 (11th Cir. 1996) ("The notion that the Constitution gives a property owner a substantive right to a correct decision from a government official, such as the building inspector in this case, is novel indeed."); *Malone v. Parker*, 953 F. Supp. 1512 (M.D. Ala. 1996) (state-created property right to home builder's license does not enjoy substantive due process protection); *North Florida Educational Development Corp. v. Woodham*, 942 F. Supp. 542 (N.D. Fla. 1996) (closure of youthful offender transition program was an executive act that did not give rise to a substantive due process claim); *Sullivan Properties, Inc. v. City of Winter Springs*, 899 F. Supp. 587 (M.D. Fla. 1995) (property rights to building permits are protected only by the procedural component of the Due Process Clause); *Bowman v. Alabama Dept. of Human Resources*, 857 F. Supp. 1524 (M.D. Ala. 1994) (no substantive due process rights attached to state-created property right in daycare license).

regulations, apply to a larger segment of society.[12] Thus, the City's application of its ordinance to the Funderburgs is an executive act for which a substantive due process claim is unavailable.[13]

To the extent that the plaintiffs' substantive due process claim is based on the legislative act of amending the driveway ordinance, the claim would also be barred. Because "[l]ocal legislators are entitled to absolute immunity from § 1983 liability for their legislative activities,"[14] the plaintiffs cannot maintain a substantive due process claim against the City based on the amendment of the ordinance.[15] As a result, the City's motion for summary judgment as to the substantive due process claim is due to be granted.

II.   Negligence

The plaintiffs claim that the City violated a duty "to act in a manner which is in the public's best interest" and to fairly and uniformly interpret and enforce its ordinances. In support of its summary judgment motion, the City argues not only that it cannot be liable for money damages absent fraudulent, malicious, or corrupt intent, but also that it is entitled to substantive immunity. Additionally, the City contends that the negligence claim is time-barred because 1) the plaintiffs failed to file a claim with the City within six months of the accrual of the action, and 2) the two-year statute of limitation expired.

The plaintiffs' negligence claim seems to contradict their primary contention, as well as their

---

12. *See McKinney*, 20 F.3d at 1557 n.9.

13. The court notes that the plaintiffs have not alleged facts supporting a procedural due process claim.

14. *Bogan v. Scott-Harris*, 118 S. Ct. at 972.

15. *See id.* at 973 ("Most evidently, [the vice president of the city council]'s acts of voting for an ordinance were, in form, quintessentially legislative.").

other claims, that the City engaged in a purposeful scheme to injure them. Even if this court were to assume that the City owed a duty to the plaintiffs to fairly and uniformly interpret and enforce its ordinances, the plaintiffs have not demonstrated that the City breached its duty. Although the record reveals that the first amendment to the driveway ordinance may have been motivated by a belief that the Funderburgs were operating a business in their home, the Funderburgs have not alleged that the amendment constituted a breach of the City's duty. Additionally, the plaintiffs have not shown how the City's belief ran afoul of the City's duty to the Funderburgs and to its other residents. The plaintiffs' negligence claim is thus based on the City's interpretation and enforcement of its ordinance. Although the evidence suggests that the City encountered confusion when it attempted to apply its ordinance to the Funderburgs' situation, no evidence indicates that the City breached a duty by relying on the opinions of its engineers. The court finds that summary judgment is due to be granted to the City on the plaintiffs' claims of negligence.[16]

III. <u>Fraud</u>

The plaintiffs allege that the City intentionally failed to represent to the plaintiffs and to

---

16. Although the court addresses this claim on the merits, the plaintiffs' state law tort claims might also be considered in light of Ala. Code §§ 11-47-23 & 11-47-192. Section 11-47-192 provides, "No recovery shall be had against any city or town on a claim for personal injury received, unless a sworn statement be filed with the clerk by the party injured . . . ." Section 11-47-23 governs limitation periods for presenting claims against municipalities and provides, "Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred." Because these sections must be read in conjunction, tort claims against municipalities are barred if not presented or brought within six months of their accrual.
  In this case, the plaintiffs filed a claim with the City on March 3, 1995. Thus, any claims that accrued before September 3, 1994 would be barred by the limitation period for presenting claims against municipalities. Although the Funderburgs contend that their claims did not accrue until late 1994 or early 1995 "when they learned that their driveway applications had been intentionally denied or blocked by the City," the Funderburgs alleged as early as October 1993 that they had suffered substantial emotional distress as a result of the City's arbitrary and capricious refusal to issue a driveway permit. <i>See</i> Notice of Appeal and Complaint to the Circuit Court, Exh. G, Defendant's 5/8/98 Supplemental Brief. If the court were to find that the state law tort claims accrued before September 1994, the six-month limitation period would bar them.

9

others the true meaning of "street frontage" and "corner radius" as used in the City's driveway ordinance, and misrepresented the usual and customary method for calculating "street frontage." The plaintiffs also contend that the City misrepresented to them that they did not have sufficient frontage when in fact, as the plaintiffs claim, they did.

In support of its summary judgment motion, the City argues that it is immune from the plaintiffs' fraud claim under Ala. Code § 11-47-190. That section provides:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless said injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his duty . . . .

Alabama courts have interpreted this section to limit a municipality's liability to wrongs suffered through the enumerated categories of neglect, carelessness, or unskillfulness.[17] Because § 11-47-190 absolves municipalities from liability for their agent's intentional torts, the defendant's summary judgment is due to be granted as to the fraud claim.

IV. <u>Outrage</u>

Summary judgment is also due to be granted as to this claim for the reasons discussed in the court's analysis of the fraud claim. The court also notes that the plaintiffs have not alleged any conduct on the part of the City that arises to the level of conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency," or that the plaintiffs suffered emotional distress so severe that no reasonable person could be expected to endure it.[18]

---

17. *See Scott v. City of Mountain Brook*, 602 So. 2d 893, 894 (Ala. 1992); *Altmayer v. City of Daphne*, 613 So. 2d 366, 369 (Ala. 1993).

18. *See American Road Service Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980).

V.  Breach of Contract

The plaintiffs allege that there was an implied contract between the City and themselves under which the City agreed to interpret its ordinances professionally and consistently and to provide fair access to its services. However, the plaintiffs do not allege any facts from which this implied contract could have arisen, and the court has not been able to discern any. Consequently, summary judgment is due to be granted to the City on the plaintiffs' breach of contract claim.

### Conclusion

For the foregoing reasons, summary judgment is due to be granted in favor of the City on all counts. Because the City was due summary judgment on the merits of the plaintiffs' claims, it was not necessary to address the arguments concerning statutes of limitations and the Soldiers' & Sailors' Civil Relief Act. The court notes, however, the presence of serious issues as to whether the plaintiffs' claims were barred.

Dated: _May 10_, 1999

_____
Chief Judge Sam C. Pointer, Jr.

Service List:
    Mr. Robert M. Pears
    Mr. Michael G. Kendrick
    Ms. Victoria J. Franklin-Sisson
    Mr. Michael K. Beard
    Mr. Robert M. Girardeau
    Mr. David Michaels